1                    UNITED STATES DISTRICT COURT

2                      DISTRICT OF CONNECTICUT

3    _____
     JANET LOWE, ET AL,            )August 26, 2016
4                  Plaintiffs  )
     v.                            )
5    PLANNING AND ZONING           )
     COMMISSION OF THE TOWN OF     )
6    MANSFIELD                     )3:16cv381(JCH)
                   Defendant   )11:20 a.m.
7    _____)

8                                   141 Church Street
                                     New Haven, Connecticut
9
                        HEARING
10

11   B E F O R E:
                     THE HONORABLE JANET C. HALL, U.S.D.J.
12
     A P P E A R A N C E S:
13

14   For The Plaintiffs  :    Arthur Allan Smith
                               Law Offices of Arthur Smith
15                             104 Hungerford St.
                               Hartford, CT 06106
16

17

18   For the Defendant   :    Winifred B. Gibbons
                               Howd & Ludorf, LLC
19                             65 Wethersfield Ave.
                               Hartford, CT 06114-1190
20

21

22

23

24

25

1      THE COURT:  We're here this morning in Lowe, et al

2  versus Planning and Zoning Commission for the Town of

3  Mansfield, Case Number 316CV381.  If I can have appearances

4  please.

5      MR. SMITH:  Your Honor, Arthur Smith.  I'm

6  representing Ling-Chuan Chu, Amin M. Keshwani, Helen Jane

7  Fried, Maryllyn Donna Fairfield and Janet Lowe.

8      THE COURT:  Good morning to you.

9      MS. GIBBONS:  Winifred Gibbons for the defendant

10  Mansfield Planing and Zoning Commission.

11      THE COURT:  Is the green light on?

12      MS. GIBBONS:  Now it is.  Winifred Gibbons for the

13  defendant Mansfield Planning and Zoning Commission.

14      THE COURT:  You both may be seated.  We're here this

15  morning primarily on the first motion to compel

16  interrogatories and the request for production filed by the

17  plaintiffs.  There's also a pending motion to amend or leave

18  to amend I guess the complaint that's filed twice.  I'm

19  talking about Docket 42.  If I have the time, I will get to

20  that as well.  Just give me a minute to get organized here.

21      This is really to both of you as a preliminary

22  question.  It appears that you met and conferred over e-mail.

23  Is that a fair assessment?

24      MS. GIBBONS:  Yes, your Honor.

25      THE COURT:  It was reported by one of you that you

1   were, quote, unable to come to agreement, end quote.  Does

2   that mean there was no agreement reached on anything that's

3   in dispute between the parties as to this discovery?  Is that

4   a fair statement?

5        MR. SMITH:  No, your Honor.

6        THE COURT:  Okay.  So what did you agree to in your

7   meet and confer by e-mail?

8        MR. SMITH:  Your Honor, the defendant agreed to

9   provide the Vita resume of the planning and the zoning

10  director Linda Painter and they did that shortly before

11  deposition, your Honor.

12       THE COURT:  All right.  Attorney Gibbons, according

13  to Attorney Smith's affidavit, he says he contacted you on

14  July 1 and not hearing from you, contacted you again on July

15  13.

16       In your papers, you recount that you gave your

17  answers on June 30, and he contacted you on July 13.  What

18  happened?

19       You didn't receive a communication on July 1?  He's

20  telling me under oath what he's telling me isn't right.

21       MS. GIBBONS:  Which dates were you referring to?

22       THE COURT:  His allegation in his complaint that he

23  reached out to you I presume by e-mail on July 1.

24       MS. GIBBONS:  I would have to check my e-mail. I

25  don't remember if I received that.  I know that we did not

1    always respond the same day.  I was in court a few of the

2    times.  I tried to respond promptly and give what I can when

3    I can.  Other things are happening.  I'm trying to give this

4    as much attention as possible, trying to be as responsive as

5    possible.

6         THE COURT:  I don't think 12 days with a federal

7    holiday is being responsive. If he's correct he reached out

8    on the first of July, then not hearing from you and causing

9    him to contact you again on the 13 is not adequate.

10        MS. GIBBONS:  I apologize for that delay.

11        THE COURT:  Attorney Smith, have you read the

12   Federal Rules of Civil Procedure 26 since they were amended

13   on December 1 of last year?

14        MR. SMITH:  No, your Honor.

15        THE COURT:  Okay.  That would explain why every time

16   you quote them to me to support the proposition that there's

17   broad discovery and you quote the language which is unchanged

18   language, the part of the sentence you quote from the prior

19   rule.  If I can find it, I will quote it to you.  Parties may

20   obtain discovery regarding any matter not privileged that's

21   relevant to the claim or defense of any party.  The problem

22   is the period in your briefs every time you quote that

23   because that's what the rule used to say and now the rule

24   says and the same part of the sentence, you didn't ellipsis

25   it, proportional to the needs of the case considering the

1   importance of the issues at stake, the amount of controversy,

2   the parties relevant access to relevant information, the

3   parties resources, importance of the discovery in resolving

4   the issues and whether the burden or expense of the proposed

5   discovery outweighs the likely benefit.

6           MR. SMITH:  Thank you, your Honor.

7           THE COURT:  The first thing I would like to resolve

8   I believe relates to the request for production or comes out

9   of the discussion of request two, but I don't know.  I could

10  have the wrong number.  This business of the audiotape which

11  still seems to be in dispute.

12          I understand from the defendant's response which

13  seems reasonable to me, there's no such thing as a tape.  Do

14  you understand that to be the case or do you believe there

15  really is a physical tape recording?

16          MR. SMITH:  Your Honor, if I can address that

17  specifically.

18          THE COURT:  Yes. That's what I would like you to

19  do.

20          MR. SMITH:  We had an ongoing discussion about the

21  recording, the videotaping of that special hearing.  The

22  difficulty is that we now for the last time, August 17 of

23  this year is the first time we received what's in totality

24  the transcripts and the hearing and the question remains

25  that's not absolutely clear is when the transcripts were

1    made, were they made from the digital recording, were they

2    made from this link site that's now being added.  You can see

3    that in our attachments to the most recent filing to the

4    certified returner of record that should have been actually

5    provided September 18 of last year.

6         So we have an ongoing, but to answer your question,

7    we now have and I'm not anticipating there's another

8    document.  Although there's concern.

9         As you may recall when we had our first conference,

10   the discussion was may I begin with my deposition of the

11   director of planning and zoning just to establish and

12   maintain the record as it was, primarily all documentation

13   related to the special permit hearing.

14        We had the first deposition in this matter on July

15   22 and the defendant was given the opportunity to review that

16   deposition, and I just received yesterday that Linda Painter

17   signed and under oath that she swears that everything in that

18   deposition was true but for a different date July 21, 2016.

19        So we're confronted once again with a document that

20   doesn't reflect the reality of the time frame in which it was

21   signed.

22        THE COURT:  I don't understand.

23        You can be seated.

24        MR. SMITH:  Your Honor, the errata sheet for the

25   deposition.  She was deposed.

1          THE COURT:  What's the date?  What's the date she's

2    saying is a different date?  What is it the date of?

3          MR. SMITH:  The date of the deposition.  She's

4    signing that the deposition.  For clarification, I could

5    present to the court the --

6          THE COURT:  Just tell me verbally if you can make it

7    clear to me.  You are telling me she testified to some date

8    and now she corrected her deposition to say it happened on a

9    different date?

10          MR. SMITH:  Yes, your Honor.

11          THE COURT:  What's the date of?  Is it your

12    birthday?  My birthday?  What's the significance of?

13          MR. SMITH:  The deposition date.

14          THE COURT:  The date the deposition occurred?

15          MR. SMITH:  Yes, your Honor.

16          THE COURT:  What does that have to do with my

17    question to you about whether you have an audio link and

18    whether you have any question that there's some type of

19    recording that you continually ask for that.

20          MR. SMITH:  Because that deposition specifically

21    addressed all the documentation they would have in their

22    possession regarding the videotape.

23          THE COURT:  What does the date of the deposition

24    have to do with whether she told you she's produced

25    everything or not?  I'm completely befuddled.  Let's roll

1    back the tape to my initial question.

2            You have in your various pleadings continually

3    asserted you did not receive the tape recording.  The

4    defendant responded to your initial argument there's no tape

5    recording as in a physical tape.  There is a digitally stored

6    record of what was said at the hearing and they have provided

7    you a link.

8            I'll make it very, very clear.  Do you still contend

9    there's some tape recording other than the link, the digital

10   recording, that they haven't produced to you?

11           MR. SMITH:  No, your Honor.

12           THE COURT:  That's good.  And they have produced to

13   you and given you the link to the recording that you are able

14   to access?

15           MR. SMITH:  Yes, your Honor.

16           THE COURT:  And the certificate of record is another

17   thing.  By the way, I will talk to defense counsel about how

18   long this took.  You have told me that it was very late and I

19   agree with you it was very late.

20           Let's talk about where we are now in terms of your

21   needs to have stuff in this case.  Do you now have a final,

22   albeit maybe amended, certificate of record?  I may have the

23   wrong term.  Certified return of record I guess it is called.

24   Do you have that now or you still think you don't have it?

25   Is it not complete?

1    MR. SMITH:  Your Honor, given the four different

2    certifications of return of record that we have obtained and

3    the promise of the defendant to produce a supplemental return

4    of record next week, no, I do not believe that I have the

5    complete record and that's in part why we're here this

6    afternoon.

7    THE COURT:  Okay.  Attorney Gibbons, my first

8    question to you is: Attorney Gerarde is the lead counsel in

9    that case; is that correct?

10   MS. GIBBONS:  Yes, your Honor.

11   THE COURT:  I'm very familiar with Attorney Gerarde.

12   He's been in my courtroom many times.  Tell him I missed him

13   being here and I wanted you to tell him something.  I will

14   give you a chance to explain it to me.  Maybe I will take

15   this back.  The message I want to convey to you and him is I

16   cannot understand how we are now more than a year since the

17   original filing of the case in the superior court on the

18   administrative appeal and we don't have a certified return of

19   record.

20   MS. GIBBONS:  Yes, your Honor.

21   First of all, we took over this case back in

22   February or March.  I can't speak for what happened before.

23   When it came to our attention that the record had not been

24   certified, we worked very quickly to reach our clients and

25   try to obtain everything to try to put the list together, to

1    try to communicate with opposing counsel to make sure the

2    list was complete, if he felt there were things that were

3    missing.  It is my understanding with the zoning record,

4    usually there is a back and forth discussion of do you think

5    it's complete or is there something missing.

6           We filed the initial.  It did not have the DVD.  It

7    didn't have the transcripts.  I think there were a few

8    errors.  We moved quickly.  We moved to supplement that.  The

9    DVD has audio and video.  There's two transcripts of both

10   parts herein.

11          I thought that was complete.  I sent Attorney Smith

12   an e-mail, please let me know, before I file this, if there's

13   anything else you think should be included.  At that time,

14   there was a lot of confusion.  We were talking about the

15   deposition. I did not hear something specific.  It came out

16   there were two sets of transcripts.

17          One comes from the transcribing service.  Not all of

18   the names are put in.  Someone in the zoning officer puts

19   names in.  That's the final transcript included with the

20   return of record.  The other is the same except it doesn't

21   have all the names.  That's why that's not included.

22          If Attorney Smith would like that included in the

23   final return of record, we're happy to include it. The same

24   with that audio link.  There's audio on the DVD.  If the

25   audio link also needs to be included, we'll have the link

1    included in the return of record.

2         I don't want to delay this any further.  I would

3    like to work with Attorney Smith to make sure this is the

4    list we agree on.  I know it has taken a long time.  Since we

5    have taken over the case, it's been a conversation we're

6    trying to keep open.

7         THE COURT:  Six months since you took over the

8    case.

9         MS. GIBBONS:  I understand, your Honor.

10        THE COURT:  When did you learn it wasn't a complete

11   record?

12        MS. GIBBONS:  I thought it was.  From my

13   understanding of zoning return of record needs to include the

14   transcripts, we included the audio.  It's my opinion that

15   could be complete.  If Attorney Smith wants to include other

16   things, we're happy to include those.

17        THE COURT:  When did he ask you to include the

18   transcript with the names of the speakers?

19        MS. GIBBONS:  He didn't ask to include those yet.

20   He asked us to send those to him.  If he would like those

21   included, I'm happy to include them.

22        THE COURT:  He said you are promising him next

23   week.

24        MS. GIBBONS:  The person who certifies the record is

25   on vacation this week.  That's the only reason we're not

1    doing something yesterday.

2            THE COURT:  When was the last return of record made

3    by that person?

4            MS. GIBBONS:  I think in March or April.  I don't

5    recall the exact date.  I didn't realize.  It was not until

6    we parsed out that there were different versions of the audio

7    and video and came to my attention that Attorney Smith would

8    like those on the return of record.  We'll put those on the

9    return of record.  I will put it together today.

10           THE COURT:  Does he have all of them in his

11   possession?

12           MS. GIBBONS:  I have sent him copies of everything.

13   We have never agreed what we had finally filed -- my

14   understanding is that once we agree on everything in the

15   return of record, certified copies are filed either with

16   Attorney Smith and the court.  I have given him.  I emailed

17   him everything.  I emailed him the audio link back in March.

18   I don't believe he specifically requested that be on the

19   return of record.  The DVD that has audio is on the return of

20   record.  The transcripts that match the audio and the DVD are

21   on the record.  We're looking at duplications but I'm happy,

22   very happy to move quickly next week to address them and

23   certify them.

24           THE COURT:  Is there anything you want to take

25   exception to that counsel has said or why you think you're

1    put upon -- clearly the record should have been certified

2    sooner.  It sounds like you have everything that's going to

3    be in the record.  And then that it is the certified.  It is

4    important in state court because that's what triggers whether

5    you get a decision from the judge.  This case is going to go

6    a little different than that.  I agree you are entitled to it

7    and you were entitled to it awhile ago.  If you are wanting

8    things included, I don't know that you are prejudiced at this

9    point, but if there's something I'm missing, tell me,

10   Attorney Smith.

11        MR. SMITH:  Your Honor, the delay at this point is

12   critical.  If you look at the pleadings, most of the clients

13   that I represent are 65 or older, 72, 70.  It is very

14   important that we move quickly on this, if possible.

15        I would like to correct the record.  The request for

16   the DVD of the transcription was made as early as September

17   18, 2015, and if the defendant counsel now has the entire

18   record from the court below, it should be reflected that this

19   has been an ongoing request and the reason that the

20   significance of this special permit hearing is that one of

21   the critical issues in the motion is whether or not the

22   planning and zoning commission actually even passed a motion

23   regarding this property.

24        If you read the transcripts, it wasn't 17 Olsen

25   Drive.  It was 17 Nelson Drive.  So, of course, that's a

1    fundamental issue that has been lost in the long process of

2    trying to obtain these records.

3         THE COURT:  Tell me what that has to do with the

4    question of getting the record certified and is there

5    something you don't have that you should have now?

6         MR. SMITH:  Thank you, your Honor.  Because after

7    the first certified record, I believed I had everything and I

8    discovered that I didn't and this ongoing process has not

9    been one of disclosure, but whether or not it is relevant at

10   this point in time with discovery, goes to the large issue

11   what do I need to obtain through discovery now.

12        THE COURT:  This falls into the category of it is

13   water over the dam so it's the kind of thing I don't like

14   lawyers saying to me, so I don't know why I think I can say

15   it to you, but I will say it any way.

16        I appreciate your clients want this case to be heard

17   promptly and I will do all in my power to do that, but the

18   case has been pending in this court since when?

19        MR. SMITH:  March 7.

20        THE COURT:  It was pending in state court and your

21   discovery is early June.

22        MR. SMITH:  I, in no way, your Honor, intend to make

23   any statement with regard the --

24        THE COURT:  I know you are not.  I'm saying it takes

25   a village to get a case to be disposed of one way or another.

1     It is not just me.

2            We'll slog through these requests.  I will do them

3     in numerical order so Interrogatory 3 and Request For

4     Production 2, describe in detail, then produce all evidence

5     upon which you intend rely or submit at trial.

6            Have the parties done initial discovery under Rule

7     26(a)?

8            MS. GIBBONS:  We have, your Honor.

9            THE COURT:  You both understand that you have an

10    obligation to supplement that as you uncover witnesses and

11    the evidence that's called for.  Okay.

12           I don't know what you want me to make the defendants

13    do, sir.  In my opinion, what they are going to submit at

14    trial is what the pretrial memo is meant to cover.  They are

15    going to identify witnesses and exhibits.  You are going to

16    make in limine motions or arguments, whatever you want to

17    make.  The answer to that is wait a minute, discovery has

18    ended.  Then I hear about Mary Jane whom I never knew is

19    going to be a witness.  That's why 26(a) initial disclosure

20    works.  If they don't identify someone and come after

21    discovery and say Mary Jane, they are not likely going to be

22    able to call her as a witness unless I can figure out a way

23    to save you from the prejudice of the late disclosure.  But I

24    would say generally an interrogatory and request for

25    production about what are you going to produce at trial is

1    not helpful and premature at this stage so I would not grant

2    your motion to compel.

3          MR. SMITH:  Thank you, your Honor.

4          THE COURT:  The next one, Interrogatory 4 and

5    Request for Production 3, the interrogatory is to state and

6    describe in detail all defendants as defined above and I want

7    to ask plaintiff about that.  Town of Mansfield employees,

8    town council members, their family members of each group who

9    worked for the University of Connecticut, provide the

10   addresses and telephone of all defendants as defined above,

11   et cetera, who work at the -- family member who work at the

12   University of Connecticut.

13          First of all, how did you define the defendants

14   above?  Is it that paragraph that says it is number 2 I think

15   or B in the definitions, quote, defendant, quote, agency,

16   quote, you, quote, yours, yourself.  Is that the definition

17   of defendant that you are referring to in the interrogatory

18   statement?  It is on page 2 of the defendant's objections and

19   responses to interrogatories.  It is attached to the

20   defendant's.  It is opposition.  It is also attached to

21   yours.  It is 5-40-3 page 3 of 11.  That's your copy.  What

22   is it the definition as defined above of all defendants?

23          MR. SMITH:  Looking at the definition page, you,

24   yourself -- you, yourself means any person, representative,

25   employee.

1          THE COURT:  I can read it.

2          I'm trying to ask you when you say in interrogatory

3     4 all defendants as defined above, are you referring to the

4     individual defendants on the caption of the case or are you

5     trying to sweep within it any persons or entities acting on

6     or purporting to act on behalf of the planning and zoning

7     commission of the town and the town?

8          MR. SMITH:  Yes, your Honor.  That's exactly what

9     I'm attempting to do.

10          THE COURT:  I don't think you can ask a party,

11     that's what these interrogatories are addressed to these

12     people who are parties, to provide information about the rest

13     of the world.  How would they know the addresses and

14     telephone numbers of every person the Town of Mansfield

15     employs or whose spouse works at UConn who is in the public

16     safety department of the town of Mansfield.  It is not the

17     planning and zoning committee.  It is not the defendant.  It

18     is like me asking you in a lawsuit, give me the names and

19     addresses of everybody in your church or your country club or

20     I don't know.  I guess I have more fundamental question about

21     the UConn issue in the case that I will get to.  I'm

22     struggling.  You use this throughout the interrogatories and

23     the request this concept of state and describe in detail this

24     universe of people.  I don't know why it is relevant to the

25     case, why it is going to lead to anything that's going to be

1    relevant to your claim of or their defenses.

2              MR. SMITH:  May I respond?

3              THE COURT:  Yes please, thank you.

4              MR. SMITH:  The intent in broad sweeping requests

5    for discovery is to try to find any potential undue influence

6    on members of the planning and zoning committee and the

7    influence that they may have because of spousal association

8    with the University of Connecticut.

9              THE COURT:  What does the University of Connecticut

10   have to do with this case?

11             MR. SMITH:  It is fundamental, your Honor.  The

12   placement of students into neighboring communities where the

13   traffic, the safety and the issues related to the student

14   dwelling in areas that are or have been the homes for people

15   with special needs who are disabled.

16             THE COURT:  That's Olsen Drive is where your clients

17   live?

18             MR. SMITH:  Yes.

19             THE COURT:  How many houses approximately are on

20   Olsen Drive?

21             MR. SMITH:  I think 18.

22             THE COURT:  Do you know how many are rented to UConn

23   students?

24             MR. SMITH:  That information we provided.  I believe

25   it is in the deposition attached by Jane Helen Fried in the

1    initial pleading, your Honor.

2              THE COURT:  So could you tell me?

3              MR. SMITH:  The percentage.

4              THE COURT:  Approximately.  Is it zero?  Is it two?

5    Is it 16?  I don't know.  I would like some sense.

6              MR. SMITH:  Of how many individuals who are elderly

7    with disabilities, your Honor?

8              THE COURT:  No.  How many of the 18 homes on Olsen

9    Drive are rented or owned by UConn students.

10             MR. SMITH:  At this point, I could give you an

11   estimate of three to four dwellings within the small

12   neighborhood.

13             THE COURT:  The defendant has asserted in their

14   opposition to many of these requests about the UConn

15   connection, I will call it, that there's no evidence anywhere

16   that the property in question the subject of the special

17   permit that was granted over your client's objections, which

18   lays as the basis of that lawsuit, there's no evidence that

19   that's being rented to a UConn student.  Is that true?

20             MR. SMITH:  We have -- it is not being rented at

21   all, your Honor.  It was a special permit application to

22   obtain the ability to rent.  All we can do is look at the

23   other individual dwellings on the parcels in that

24   neighborhood who also sought similar type of rental

25   agreements, how they are now populated with the students.

1    We're looking at the evolution of the special permit for a

2    two bedroom efficiency in a neighborhood so close to the

3    University of Connecticut.

4         THE COURT:  I'm sitting here thinking I have your

5    lawsuit on behalf of elderly disabled people who live in this

6    area who feel that their rights are being impinged by this

7    shift in the neighborhood, I will call it.  I'm thinking

8    about if you win, will the next lawsuit be by UConn students

9    who claim they are being unlawfully discriminated in not

10   allowing them to live in neighborhoods.  There's no reason

11   why they shouldn't live in those neighborhoods.

12        MR. SMITH:  The students wouldn't be a part of the

13   protected class.  The elderly with disabilities are a

14   protected class.  The Fair Housing Act specifically addresses

15   whether or not these actions would have a disparate impact

16   upon elderly individuals with disabilities and there's two

17   aspects of that.

18        First of all, whether or not it is going to make

19   unavailable this housing which is 42 USC 360-04A and the

20   other issue is whether or not there's accommodations for the

21   elderly individuals when requested and the accommodation was

22   can your process, your evaluation of the merits on this

23   special permit hearing include a discussion and a response to

24   our concerns that we will no longer be able to live there

25   because of increased traffic.

1           THE COURT:  So why do you need to know who works at

2   UConn?  Why isn't it a question of you didn't allow this to

3   be the subject.  You didn't accommodate me.  You didn't allow

4   me due process-wise to present this argument.  I don't know

5   why I'm trying UConn in this case as a nondefendant in

6   effect.  This is -- I'm not going to order people to provide

7   home addresses and telephone numbers of someone who works at

8   UConn whose spouse works for the Town.  That's what you are

9   asking for.

10          MR. SMITH:  Your Honor, if you would allow me a

11  little bit more leeway.  I understand your confusion.  It is

12  frustrating I'm sure but.

13          THE COURT:  I'm not frustrated.  I don't understand

14  it.

15          MR. SMITH:  Not being able to make myself clear to

16  you.  I apologize.

17          THE COURT:  I'm not sure you will be able to.

18  That's okay not because of any lack of your ability to

19  express.  Because I don't think it doesn't have legs I guess

20  is what I'm having trouble with.

21          MR. SMITH:  The Mayor of the Town of Mansfield, Paul

22  Shapiro was an Assistant Attorney General for the University

23  Of Connecticut for over 20 years.  He's now on many boards to

24  represent not-for-profit organizations that are attempting to

25  move Masonic care facilities, institutionized living into the

1    community.  That's a concern to us.

2         THE COURT:  Why?  Why is that a concern?  Your

3    clients may be concerned about a lot of things.  They may be

4    concerned about the weather for the weekend.  Why is it

5    relevant to the case?

6         MR. SMITH:  Undue influence, your Honor.

7         THE COURT:  Undue influence.  It may be there are

8    people who don't like old people, okay, but that's a bad

9    example.  Undue influence.  Do you have any basis -- no.

10   Undue influence.  You can discover from the defendants their

11   associations with UConn.  But you are asking for all Town of

12   Mansfield employees, town council members, all their family

13   members of all of those groups.  How is that relevant?

14        MR. SMITH:  Your Honor.

15        THE COURT:  You are talking about the decisions and

16   actions of people on a planning and zoning board, right?

17   Okay.  So maybe you want to impeach them with undue

18   influence, but the fact that the, I don't know, the

19   superintendent of school's wife is a secretary at UConn, how

20   is that colorably relevant to your claim?  That's what you

21   have asked for.  You asked for the superintendent of schools

22   or the fourth grade teacher's husband who works at UConn.

23   That's what you are asking for, sir.

24        MR. SMITH:  Thank you, your Honor.  This is a

25   starting point and certainly the broadest scope of discovery

1    is being attempted to obtain?

2         THE COURT:  The problem is your use of the word

3    broad rests on the cases you cited me.  All of which predate

4    the amendment to the rules and which amendments were

5    specifically intended, in my view, to take the concept of

6    broad discovery out of federal litigation.

7         I guess I will hear from Attorney Gibbons.  My

8    inclination is to require you in response to Interrogatory 4

9    and Request for Production to answer or provide documents, if

10   there are such and you don't want to answer, but as to the

11   named defendants, is there anyone who either themselves works

12   at UConn or whose spouse works at UConn so that's what we're

13   going to do.  Is there any objection to that?

14        MS. GIBBONS:  Your Honor, if people who have

15   spouses, are we supposed to go ask if their spouse works at

16   UConn or supposed to provide if we have documentation

17   already?  I'm not --

18        THE COURT:  Okay.  You have a named defendant you

19   represent.  Those people are in this lawsuit.  When they are

20   asking in interrogatories, I'm just modifying, state, in

21   effect, let's take a plaintiff is going to answer the

22   interrogatories.  Oh, no.  It is commission.  I think the

23   members of the commission, if they know they work a UConn or

24   their spouse works at UConn, then they have to provide that

25   answer.

1            MS. GIBBONS:   That's completely amenable to us, your

2    Honor.

3            MR. SMITH:   Thank you, your Honor.

4            THE COURT:   So that's that one.   Next one is

5    Interrogatory 5 and related to that is Request for Production

6    4 which states describe in detail and identify all

7    documentation and communications that the defendant as

8    defined above, Town of Mansfield employees and Town of

9    Mansfield council members possess relating to UConn's

10   protected enroll for the next 20 years, expansion of private

11   land use and acquisition and development planning for the

12   University of Connecticut Storrs campus. Again I do not

13   believe that you can properly request a defendant to answer

14   an interrogatory or produce documents that are in the custody

15   or control or information or knowledge of nondefendants.

16   Town of Mansfield employees, Town of Mansfield council

17   members, et cetera.

18           So my first reaction to this interrogatory and

19   request for production is that it is modified so that it asks

20   only for the defendants so if the planning and the zoning

21   commission has in its possession documents concerning UConn

22   planning and development, it needs to produce those.   And I

23   guess there's no time limit as to, quote, communications

24   between the defendant and UConn.   This application was in

25   early '15?

1          MS. GIBBONS:  Yes, your Honor.

2          MR. SMITH:  June 15, 2015.

3          MS. GIBBONS:  That was the decision --

4          THE COURT:  So I would say that in terms of the

5    request for production, the defendant should produce in

6    addition to any documents that show UConn's planning and

7    development, also produce communications I will call it

8    e-mails, letters, whatever, memos, concerning re:UConn

9    development plans from January 1 of '14 to September 1 of

10   '15.  Any question about that?

11         MS. GIBBONS:  No, thank you.

12         THE COURT:  So, for example, if the

13   planning officer, the planning commission communicated with

14   UConn and said we have this document.  You are planning this.

15   What are you thinking?  That's our football field, whatever

16   it is, but it is a very limited time.

17         MS. GIBBONS:  Yes, your Honor.

18         THE COURT:  The next is Interrogatory 6 and related

19   Interrogatory 5, let me get the plaintiffs' 6 and 7.  This is

20   all communication for the last 20 years related to public

21   safety.  Communication between the university and the Town of

22   Mansfield.  I guess on its face, sir, I don't know how these

23   defendants can produce that.  They are not the Town of

24   Mansfield.  They are a commission.  It is a free-standing

25   organization.  It's like you sue me and you say to me, Hall,

1    produce all of the correspondence between Gibbons and UConn.

2    How am I going to do that?  For 20 years?  Seriously.  I have

3    never seen a request that's longer than 10 years and I have

4    never granted a request that was 10 years.  Yes, sir.

5         MR. SMITH:  Your Honor, it is a broad scope and I do

6    appreciate all the instruction I have been given today.  The

7    planning cycle for the University of Connecticut typically is

8    a twenty-year cycle.  When you look at the planning for the

9    community, the impact on the community, you are looking at

10   the growth of the university and the projected growth of the

11   university as it impacts residents.

12        THE COURT:  Go subpoena UConn.  But I have told

13   these defendants to produce communications, correspondence,

14   whatever, for about a 21-month period, give or take, 20-month

15   period around the time before and slightly after the decision

16   that you are complaining about development.

17        I have no idea how they can produce documents from a

18   non-party as it relates to public safety for the last 20

19   years.  I guess if they have communications with UConn about

20   public safety, I think that's probably not unreasonable.  The

21   question is what period of time.  I'm not going to tell them

22   20 years.  That's when we get to the part of the sentence you

23   didn't quote me proportionality.

24        MR. SMITH:  Thank you, your Honor.

25        THE COURT:  I will do the same time period 1-1-14 to

```
 1    9-1-15 and I think it is probably.  I don't think you have to
 2    answer the interrogatory other than to say see the documents.
 3    You are going to produce documents that are communications
 4    between the defendant and UConn re: public safety.
 5              MS. GIBBONS:  Yes, your Honor.
 6              THE COURT:  If there are any.  I don't know if there
 7    are.  I don't think that's burdensome.  Maybe you will hit
 8    the motherload and we'll go from there.  I don't know.
 9              MS. GIBBONS:  Thank you, your Honor.
10              THE COURT:  The next is and I appreciate I know you
11    have objected it should be limited to Olsen Drive because
12    that's the area in question.  I understand that.  I do
13    appreciate that's what this case is about.  I think you have
14    to do the search anyways.  I doubt very much there will be
15    anything particular about Olsen Drive, but I think if there's
16    correspondence about public safety generally and the growth
17    of UConn, I will say it could be relevant to Olsen Drive
18    without saying Olsen Drive.
19              I hear your argument.  I don't think it is
20    groundless generally.  I think for this search it is not
21    appropriate.
22              Next is Interrogatory 7 and Request 6, you want them
23    to provide -- well, you want them to describe, but I suspect
24    and identify all litigation involving the Town of Mansfield
25    and zoning in that town or public safety on roads in that
```

1    town for the last 20 years.

2         You lose credibility, Attorney Smith, when you do

3    something like that.  So, for example, if the town snowplow

4    took down Mabel Smith's mailbox in 1997 as far as way from

5    Olsen Drive as you could find a point in the town of

6    Mansfield, you want them to search for that and to disclose

7    it to you.

8         MR. SMITH:  Your Honor, if anyone was fatally killed

9    in that construction that you just provided, the Town would

10   be obligated through the retention of records to maintain all

11   fatalities so it wouldn't be something that would not beyond

12   their ability.

13        THE COURT:  The fact people maintain records doesn't

14   make them discoverable, sir.  I don't think.  I have never

15   seen that as a reason.  Maybe a reason why there will be

16   something to find, but I cannot comprehend how my example

17   could in any way be relevant to let alone address the

18   proportionality aspect.  I don't see how that's relevant to

19   public safety that may be threatened because of the influx of

20   students into the town communities, I will call them, Olsen

21   Drive in particular.

22        MR. SMITH:  I would want to know in 1997 whether or

23   not the woman who was injured in the fatality you described

24   had disabilities.  That would be an issue as to whether or

25   not the result of the student who was driving either

1    intoxicated or some type of undue influence.

2          THE COURT:  I could have misspoken.  Tell me if I

3    did.  I thought my example was the town's plow plowing a

4    road, the town employee hit a mailbox and knocked it down.

5    There was a lawsuit about property damage.  I wasn't talking

6    about a fatality or a person or whether or not they are

7    elderly, but that's litigation involving the Town.

8          What do you mean when you ask for documentation

9    involving the Town and zoning within that town?  Somebody

10   asked for a variance to build an addition on their house

11   that's a foot over the setback line or the side lot line, and

12   they didn't get it, and they sued the Town.  They should have

13   gotten that variance.  You want to know about that?  What

14   does that have to do with this case?

15         MR. SMITH:  Your Honor, with regard to safety, it

16   would be relevant and the other way to assess if it is safety

17   related to see the documents and review them.  There are

18   variances that do impact safety of individuals and the extent

19   to which what's being requested and what's being permitted

20   will have an ultimate impact --

21         THE COURT:  There's a lot of zoning appeals that

22   have nothing to do with safety.  I'm not going to burden a

23   party to go through 20 years of their litigation and produce

24   it all to you just because you may find in there a zoning

25   variance that has to do with safety, unless you can define it

1    in a more focused way or unless you want to volunteer to pay

2    the cost of their reviewing and contacting all their lawyers

3    whoever represented them in 20 years, getting the records out

4    of storage which there's fee for that, copying all of the

5    docket information.  I don't know.  I don't think you want to

6    pay for that.

7            MR. SMITH:  No, thank you, your Honor.

8            THE COURT:  I don't think the defendant does either

9    and I don't think they are being unreasonable.

10           Are all of these -- I don't know how to ask the

11   question, Attorney Gibbons.  Maybe you can help me.  The

12   expansion into the community of housing for students, okay,

13   is that arising in the context of zoning proceedings and are

14   these special use permits, are they zoning, what are they

15   likely to be?

16           MS. GIBBONS:  I would have to imagine.  It depends.

17   I think it is possible there would have to be rental issues

18   which could be zoning, things are done a certain way, rental

19   allowed, not allowed.  It is hard to say.

20           THE COURT:  A no rental zone. Do you have no rental

21   zones in Mansfield?

22           MS. GIBBONS:  I don't know.  I would have to check.

23   If we narrow it, I would be happy to get all the information.

24           THE COURT:  How about units?  This case is in the

25   zone.

1          MS. GIBBONS:  It is an efficiency unit.

2          THE COURT:  It is a zone of single family homes.

3          MS. GIBBONS:  Yes.

4          THE COURT:  This is a permit to allow, not only the

5     single family dwelling but to append to it, in effect, the

6     right to carve out.

7          MS. GIBBONS:  It is an efficiency unit.

8          THE COURT:  Why is it an efficiency if it has two

9     bedrooms?  Seems like an oxymoron.

10         MS. GIBBONS:  It is interesting.  This came up at

11    the zoning hearing.  I have spoken to the zoning officer.

12    The regulations say it is only two people who may occupy an

13    efficiency unit.  It does not specify bedrooms so the owner

14    of the single family home signs an affidavit saying two

15    people only will live here.  I, as the homeowner, will occupy

16    the home.  The inlaw can be rented.

17         THE COURT:  An efficiency could be one room?

18         MS. GIBBONS:  Yes.

19         THE COURT:  This has two bedrooms.

20         MS. GIBBONS: It is a renovated basement apartment.

21         THE COURT:  All right.  Well, it seems to me

22    relevant and not disproportional to make you search for the

23    time period I have mentioned, for any litigation

24    concerning -- I will start with the zoning -- zoning that's

25    sought to avoid, I will came it.  That's not the right way to

1     put it.  The zoning definition.  In other words, if it is a

2     single family zone and whether it is by permit or by

3     variance, whatever the zoning device is, it seeks to add

4     another living unit, that's no longer single.

5          MS. GIBBONS:  Other efficiency units.  We can search

6     by efficiency units.

7          THE COURT:  Yeah.  For the time period I said.

8          MS. GIBBONS:  1-1-14.

9          THE COURT:  1-1-14 to 9-1-15.  That's the zoning

10    side of it.  He asked about the safety issues.  I would take

11    the same time period.  Just because you might as look for

12    everything all at once.  That's the period you need to look

13    for.  I would do it on Olsen Drive, but I think I would ask

14    you to produce.  It could be documents or the answers to

15    interrogatories. I don't know how this will come up.  If you

16    identify zoning -- how could we do it?  Do you have any idea

17    how many permits have been issued to permit what I will call

18    a variance for a single family home unit to allow these

19    efficiencies in the town?

20         MS. GIBBONS:  Technically it is a single family home

21    under the zoning.

22         THE COURT:  How many have special permits?

23         MS. GIBBONS:  I will have check that.  I don't know

24    off the top of my head.

25         THE COURT:  What I'm thinking is -- what's hard is I

1    don't know how many there are.  If there's five, this isn't

2    hard for you.  If there's one of these special permits in

3    every neighborhood in the town, then it might be difficult,

4    but what I will order you to do, I guess once you start

5    digging, if it turns out you think to be entirely

6    unreasonable because I didn't know something, you can come

7    back and ask to modify.

8            I think what would be reasonable.  I will not put it

9    technically right.  I will explain it.  If you have a

10   neighborhood that has a special permit, then I think if you

11   have had an accident in that neighborhood in the time period

12   or there's litigation in the time period about an accident or

13   safety issue, probably be an accident but call it a safety

14   issue, if there's litigation about it, you would identify --

15   whenever I'm talking about litigation, I would give the name

16   of the case, what court it is in, the docket number.  I think

17   that's sufficient to start.  You can search online.  You can

18   search for docket entries to see what's happening. And I

19   guess if there's particular pleadings or whatever you want,

20   you can discuss that as to what's reasonable.  I don't think

21   you should start with them Xeroxing whole boxes of litigation

22   files in the lawyer's office.  I think you should have

23   records of what lawsuits there are, then we'll go from there.

24           MS. GIBBONS:  If there's litigation about

25   accidents.

 1             THE COURT:  When I say neighborhood, I really mean

 2     street.  I don't know how define neighbors.

 3             MS. GIBBONS:  My understanding is there's Olsen

 4     Drive, correct me if I'm wrong, is part of Mulberry Village.

 5             THE COURT:  It is what?

 6             MS. GIBBONS:  I believe there's a contention this

 7     street is part of a broader little neighborhood.  I don't

 8     know if that's what we're looking for.

 9             THE COURT:  I'm talking about the town.

10             I don't think there's going to be that many.  I

11     would be surprised.  Maybe there are.  If there are, then you

12     will produce them.

13             Next is Interrogatory 8 and Request for Production

14     7.  All road assessment and road safety studies for the last

15     20 years.  Why do you need road assessment information?  What

16     does that have to do with your claim, Attorney Smith?

17             MR. SMITH:  Thank you, your Honor.  The issue

18     regarding road safety has to do with a number of variables

19     that impact walkability and the extent to which individuals

20     can feel free to walk within a neighborhood if there's

21     oncoming traffic, especially by individuals who may be less

22     as a group careful in their driving. We would be looking at

23     the drainage, whether or not there's a shoulder, whether or

24     not there's lighting, whether or not there's any kind of

25     safety issues with regards to speed and any markings that

1  would mark the road itself.  Whether or not there are any

2  yellow markings in the middle of the road.

3        All of these things that might help to produce a

4  walkable neighborhood to the extent that's been studied and

5  the impact of those variables and lighting as well as

6  vegetation on the road.  All of these come together to impact

7  whether or not an elderly individual with disabilities could

8  feel comfortable with ongoing traffic that might be quicker

9  and in many cases, more frequent than when they began at a

10  younger age living in that neighborhood.

11        THE COURT:  Do you think you answered my question?

12        MR. SMITH:  I hope I did, your Honor.

13        THE COURT:  My question was why are road assessments

14  relevant.  To me a road assessment means the Town has said to

15  someone who lives on a particular road or all roads, you are

16  going to pay an extra $100 so we can stripe the road or build

17  a sidewalk or put in lights or whatever.  So I don't know why

18  discovery about road assessments is relevant to your claim.

19        MR. SMITH:  Well, because as you mentioned, your

20  Honor, sidewalks are a large part of some of our concerns

21  about safety as well as potholes.  If you don't have a

22  shoulder on the side of the road --

23        THE COURT:  I'm sorry to interrupt you, sir.  You

24  can ask, this is the planning zoning committee, it is not the

25  public safety department.  You are asking the wrong person.

1    You can do an FOIA of the town roads department I suppose.

2    You can do a deposition of the roads department.  You could

3    do a subpoena of them.  I don't know that they are going to

4    have much information about the road assessments, but I

5    really don't understand.  I understand what you want to know

6    about the roads, but I don't know why whether there was a

7    road assessment in 1997 for Smith Road matters.  It either

8    has a line down the middle or it doesn't.  It either has a

9    sidewalk or it doesn't.

10           What does the road assessment tell me?

11           MR. SMITH:  These all address the safety issues for

12   individuals who are elderly with disabilities and their

13   ability to maintain good health by being able to walk in

14   their neighborhoods.  All of these issues --

15           THE COURT:  I will ask you one more time because you

16   aren't answering my question. I hear your speech about your

17   clients. That's great.  But to advocate for them you, have to

18   answer my question.  Why does whether a road assessment was

19   placed on the road in the town of Mansfield, go to the

20   discrimination against elderly disabled people who want to

21   walk on country roads?  How does whether a road assessment is

22   assessed or not?

23           MR. SMITH: Perhaps I haven't defined well what road

24   assessment means.  You alluded to sidewalk.  To the extent,

25   there are shoulders on the road.  Those would be the very

1   variables we would be looking to determine walkability.

2       THE COURT:  I don't disagree with you, but I don't

3   think asking if they assessed road assessments is going to

4   give you an answer.  I don't think this defendant has this

5   information.  Does the planning and zoning deal with whether

6   there's going to be a sidewalk on Main Street versus Apple

7   Street?

8       MS. GIBBONS:  Not to my knowledge, your Honor.

9       THE COURT:  All right.  Road safety studies.  Again

10  I don't think this defendant is going to have them, but I

11  don't see -- what I would order is that if you have in the

12  possession of the defendant, any road safety studies.  Go

13  back let's say.  I will make this a bit longer.  I doubt you

14  are going to have any.  I would say from 9-1-12 to 9-1-15 if

15  you have in your possession, the defendant, road safety

16  studies that you are ordered to produce them.

17      MS. GIBBONS:  We will, your Honor.

18      THE COURT:  Next is the Interrogatory 9 and Request

19  Number 8.  Again, sir, you are asked the question about

20  communication systems in place between the Town and state

21  residents state trooper and UConn police.  Why do you think

22  this defendant would have that information?

23      MR. SMITH:  Your Honor, it's been a long history of

24  town gown difficulties in the Town of Mansfield.  The zoning

25  commission has worked closely with that committee and I do

1    believe there are individuals on the planning and zoning

2    committee who participate in the town gown discussion with

3    the University of Connecticut.

4         I think they would have information with regards to

5    the amount of intoxication, the amount of parties, the amount

6    of harm to individuals surrounding certain so-called party

7    houses in the neighborhood and the extent to which these

8    activities of the student have an impact on nearby neighbors.

9         Specifically here we're talking about the elderly

10   with disabilities so once again we're talking about

11   intoxication, property damage and vehicular traffic

12   violations.

13        All of these have an impact on the walkability of

14   the community by elderly with disabilities.

15        Once again we're trying to determine the extent to

16   which they had that information in mind when they granted

17   special permits in areas where they knew to be occupied by

18   the elderly with disabilities and this is the issue in front

19   of you, when they were approached with will you consider

20   that.

21        THE COURT:  I don't -- I can't understand the

22   English of your request.  Let me read it out loud to you.

23   Provide all documentation in communication systems in place.

24   I don't know what that means.  Documentation in communication

25   systems in place.  I don't know what that means.  Then

1   between the town trooper and UConn Police for the last 20

2   years.   I don't know you have communication systems of

3   student arrests.   Grammatically I can't understand the

4   request.

5           MR. SMITH:   It is difficult, your Honor.   If you

6   understand that the university has a very close relationship

7   with UConn police officers and the troopers stationed in

8   Mansfield have communication systems where they exchange and

9   recently there have been programs in which the troopers for

10  the town go talk with the residents and the troopers from the

11  university go talk with students from so-called party houses.

12          There's a communication that's between them as to

13  how to resolve this issue either with masters who are

14  so-called student masters that go out into the community to

15  talk to students about their behavior or to threaten or warn

16  the police so there's a communication pattern that's

17  established between the two.   What we need to find out is

18  what they knew and when they knew it with regard to certain

19  neighborhoods and the extent of which those so-called party

20  houses and the students in those areas were impacting the

21  walkability of the elderly with disabilities, your Honor.

22          THE COURT:   I'm going to sustain the objections to

23  the request to the interrogatory because I do not think as

24  written it makes any sense to me.   To the extent it seeks

25  communications in the possession of the defendant concerning

1    the subject matters A, B, and C for the time period of 1-1-14

2    to 9-1-15, the Court will order that the request for

3    production be complied with as modified.  The interrogatory

4    doesn't have to be answered.

5              MS. GIBBONS:  Thank you.

6              THE COURT:  The next is Interrogatory 10 and Request

7    for Production 9.  I guess I don't understand.  I understand

8    your objection, Attorney Gibbons, that it has to do with the

9    Fair Housing Act.  They do have a Fair Housing Act claim and

10   they claim that you didn't consider those related fair

11   housing arguments, I will call them, at the hearing.  I guess

12   they ask for a job description and responsibilities.  That

13   doesn't seem burdensome.

14             MS. GIBBONS:  We provided that.

15             THE COURT:  Preservation and production of records,

16   your policies, that doesn't seem burdensome.  Regulations and

17   codes related to nonsegregated housing and accommodation of

18   disabled senior residents.

19             MS. GIBBONS:  We provided that along with the job

20   description.

21             THE COURT:  So I think you have to amend your

22   response to the question for production.  You said you

23   provided the description, the regulations, the resolution and

24   fair housing. So you haven't provided all Fair Housing Act

25   funding received in 10 years.

1          MS. GIBBONS:  Yes.  That's only thing I believe.

2          THE COURT:  Attorney Smith, you make the argument

3     which I'm not saying it is irrelevant that the defendants

4     have an obligation under the law to do certain things and

5     behave in certain ways.  I don't think the defendant is

6     denying that the Town gets funding if that makes them subject

7     to the FHA.  I don't know why they have to go and dig through

8     files.  I don't think they will be the defendant's file so I

9     think the answer of the defendant is we don't have these

10    records.  I could be wrong.  Why do you need to know all of

11    these applications that aren't related to your clients if it

12    is an issue of law and they don't deny that they are subject

13    to these obligations under the law?  We don't have to prove

14    they got funding that makes them subject to it.  They admit

15    it.  That seemed to be your argument.  I don't know why we

16    needed to do all this discovery 10 years, let alone 10 years,

17    to allow you to try to prove something the defendants don't

18    dispute.

19          MR. SMITH:  If I may, your Honor.  The Fair Housing

20    Act has an affirmative obligation in general, but more

21    specifically depending upon the applications they filed,

22    there may be special applications that address the needs of

23    the elderly with disabilities in the community.  To the

24    extent which all of those are relevant to this case, the 10

25    years we do not know how many years back they applied.  I

1    would assume they've been getting FHA funding for 20 years.

2    The extent to which the last 10 years, they have been

3    receiving funds to make sure to take affirmative action that

4    elderly citizens in that community with disabilities are

5    going to be able to age in place is relevant.  And I would

6    hope we would be able to find out through discovery exactly

7    how much money they have been given by the federal government

8    to ensure that the elderly in their community with

9    disabilities will be able to --

10            THE COURT:  You can ask that interrogatory for two

11   years.  I would think that -- again, I don't know that the

12   planning and zoning commission of the town is the entity

13   that's engaged in those activities so I really.  I think

14   their answer is going to be don't ask me.  I don't know.

15   Okay.  But I guess I want to be certain unless I overlooked

16   it.  This is not a class action, right?

17            MR. SMITH:  No, your Honor, it is not.

18            THE COURT:  This involves the granting of the

19   special permit on one street in the town of Mansfield, right?

20   So I mean it may be that the town should have built a senior

21   citizen center.  They may be should have done -- I don't know

22   what else they should have done.  That's not what the case is

23   about.  I'm not going to narrow it just to Olsen Street.  I

24   have given you directive to do more than that.  But I also

25   don't think that you should take that to mean this case is

1    going to be about the world.

2         There's a motion.  I have to get off the bench.

3    There's a motion for leave to file a seconded amended

4    complaint.  To be perfectly honest with you, I haven't

5    carefully read the objection that came in a few days ago.  I

6    didn't see it.  My sense is that you're claiming the

7    amendment is futile.  I think I would unless you want to try

8    to persuade me, my view would be let him amend, then we'll

9    argue it out on a motion to dismiss that this fails to state

10   a claim.  You may be right about that.  I would rather not do

11   it in the context of this, the motion to amend.  I would

12   rather do it in the context of 12(b).

13        MS. GIBBONS:  That's acceptable to me.

14        THE COURT:  Do you have any problem with that, sir?

15   I will grant the plaintiffs' motion for leave to file the

16   second amended complaint.  That's docket number 42.  I think

17   there was an earlier motion.  This is like an amended motion

18   I think you did.  Make sure there's only one such motion and

19   that I dealt with it by that ruling.  Anything further?

20        MS. GIBBONS:  I want to clarify I believe a joint

21   status report was due today.  Do you want us to file

22   something today?

23        THE COURT:  I do.  I don't know what lawyers think

24   about that.  I don't think many of my colleagues require it.

25   I find it extremely helpful.  It tells me when I get them are

1    these people working on the case or not.  When people start

2    asking for extensions and they didn't do anything for six

3    months, I have a record and in addition it is a record.

4              Over the course of the litigation, I might get three

5    or four of them.  I can look back and see.  Okay.  What's the

6    problem here or what was the delay or whatever I would like

7    you to do it.  You can have until Friday.  How about next

8    Wednesday?  Do you think you can work that out by then,

9    that's fine.  Diahann doesn't send out the hate order that

10   you missed this date for a few days anyway.  You never know.

11   She might have cause on Monday.  Thank you all very much.

12   We'll stand in recess.

13             (Whereupon, the above hearing adjourned at 12:27

14   p.m.)

15

16

17   <u>COURT REPORTER'S TRANSCRIPT CERTIFICATE</u>

18   I hereby certify that the within and foregoing is a true and

19   correct transcript taken from the proceedings in the

20   above-entitled matter.

21

22   <u>/s/  Terri Fidanza</u>

23   Terri Fidanza, RPR

24   Official Court Reporter

25