**UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| JANET LOWE, et al. | : | |
|     Plaintiffs, | : | CIVIL ACTION NO. |
| | : | 3:16-CV-381 (JCH) |
| v. | : | |
| | : | |
| PLANNING & ZONING COMMISSION | : | JANUARY 10, 2018 |
| OF THE TOWN OF MANSFIELD, et al. | : | |
|     Defendants. | : | |

**RULING RE: MOTIONS TO DISMISS (DOC. NOS. 118 & 119)**

## I. INTRODUCTION

Plaintiffs Janet Lowe, Amin M. Keshwani, Ling-Chuan Chu, Helen Jane Fried, and Maryllyn Donna Fairfield (collectively "plaintiffs") bring this action against the Town of Mansfield, the Town of Mansfield Planning and Zoning Commission ("PZC"), Paul Shapiro, Matthew Hart, Linda M. Painter, and JoAnn Painter ("Mansfield defendants") for alleged deprivations of rights under the Fair Housing Act ("FHA"), the Due Process Clause of the Fourteenth Amendment, and municipal zoning regulations arising from the procedure used to approve a special permit application for a two-bedroom efficiency unit. Plaintiffs also bring a claim for private nuisance against Adam Lambert ("Lambert"), the owner of the residence that won approval from the PZC.

The Fourth Amended Complaint (Doc. No. 116) alleges violations of section 8-23 of the Connecticut General Statutes, "Preparation, Amendment or Adoption of Plan of Conservation and Development" (Count One); violations of the right to procedural due process under the Fourteenth Amendment pursuant to section 1983 of title 42 of the United States Code (Count Two); and violations of the Fair Housing Act ("FHA"), 42 U.S.C. § 3604, and section 1982 of title 42 of the United States Code (Count Three)

1

against the Mansfield defendants. The Fourth Amendment Complaint also brings a claim for private nuisance against Lambert (Count Four).

Lambert moved to dismiss Count Four (Doc. No. 118) and the Mansfield defendants moved to dismiss Counts One, Two, and Three (Doc. No. 119). For the reasons that follow, both Motions to Dismiss are granted and the Fourth Amendment Complaint is dismissed in its entirety.

## II. FACTUAL BACKGROUND[1]

Plaintiffs live in the neighborhood of Mulberry Village in the Town of Mansfield, Connecticut. 4th Am. Compl. at ¶ 1. Janet Lowe, Helen Jane Fried, and Maryllyn Donna Fairfield are over the age of 65 and have disabilities as defined by the FHA. Id. at ¶¶ 7, 10, 11. Amin M. Keshwani and Ling-Chuan Chu also reside in Mulberry Village. Id. at ¶¶ 8, 9.

On May 7, 2015, Adam Lambert submitted a special permit application for a two-bedroom efficiency unit in Mulberry Village, which is zoned as a single-family district. Id. at ¶ 26. According to a zoning agent, the application was the first two-bedroom efficiency unit request in over twenty years. Id. at ¶ 26. The Zoning Regulations of the Town of Mansfield, Article X, Section L1 govern consideration of applications for efficiency units. Id. at ¶ 27. The statement of purpose provides:

> This amendment will meet an identified need to provide housing for immediate family members, usually the parent(s) of either spouse. In addition, it will also allow young individuals, or couples another housing option when unable to purchase houses, given the rapid and expected continued increase in the price of the conventional single-family unit. The efficiency unit may also act as a source of income <u>for financially overburdened families</u> (emphasis added). It also may allow the elderly to

---

[1] All "facts" are taken from the Fourth Amended Complaint unless otherwise stated.

continue to live in their own homes knowing there is someone else on the premises in case of emergency.

Id. Lambert's application did not state that he is "financially overburdened." Id. at ¶ 28.

On June 2 and June 10, 2015, the PZC notified the public that a hearing on the special permit application for the efficiency unit at 17 Olsen Drive was scheduled. Id. at ¶ 30. The notice did not indicate that the application was for a "non-compliant commercial use" or that the Town's Article X income eligibility requirement for the commercial use of an efficiency unit had been amended. Id. at ¶¶ 30–31, 92. The Mansfield defendants also did not publicize that "the Town's Article X's [sic] income eligibility requirement for the commercial use of an efficiency unit had been legislatively changed" despite a requirement that proposed changes to town zoning regulations be publicized and discussed at a public hearing. Id. at ¶¶ 31–32.

On June 15, 2015, the PZC held a public hearing to consider the Lambert special permit application. Id. at ¶¶ 3, 31. When a PZC member raised the efficiency unit income eligibility requirement at the meeting, JoAnn Goodwin, the PZC Chairperson, stated that the PZC could not consider income eligibility when considering the Lambert special permit application. Id. at ¶¶ 45–46, 68, 82. Linda M. Painter, the Director of Zoning and Development, stated that the Town has a "pattern and practice of not considering the Article Ten income eligibility requirement or considering protected class disparate impact assessments when assisting the PZC with draft approval motions." Id. at ¶¶ 48, 70, 80, 83. The PZC determined that it could not consider harm to the elderly with disabilities when considering the special permit application. Id. at ¶ 3, 65. Plaintiffs allege that the permit was granted without prior notice of new zoning legislation or

3

consideration of the long-term disparate impact on Fried and Lowe specifically and the elderly with disabilities in Mulberry Village in general. Id. at ¶¶ 4, 65, 101, 103. Notice of the PZC's decision was published in The Chronicle on June 22, 2015. Id. at ¶ 94.

After the zoning decision approving Lambert's application and its appeal to the Superior Court, Ben Shaiken—then a member of the Zoning Board of Appeals and currently the Town Counselor—visited Lowe's home and told her that her appeal was a waste of taxpayer money. Id. at ¶ 49. Although plaintiffs requested the transcript of the deliberations over the Lambert special permit application, the transcript they received "established that the PZC did not render a decision on a Lambert property at 17 Olsen Drive but on a parcel identified as 17 Nelson Drive." Id. at ¶¶ 106–08.

As a result of deforestation and movement of soil on Lambert's property, the surface water drainage from the Lambert property to the Keshwani and Chu property "was altered in November of 2016." Id. at ¶ 37. The Town of Mansfield issued a stop work notice to Lambert on November 7, 2016, because he did not have a permit for construction on his property, the building was larger than the dimensions the Town had approved, and an assessment of the retaining wall between the Lambert and Keshwani and Chu property was needed. Id. at ¶ 38. Keshwani has repeatedly asked Lambert to keep his chickens and dogs off of the Keshwani and Chu property and to conform his outdoor fires to the "town permit assessment," but to no avail. Id. at ¶¶ 39–40. Lambert has also not heeded Keshwani's requests that Lambert not move his earth moving equipment through an "unauthorized driveway" that passes through Keshwani's property. Id. at ¶¶ 41–42. Finally, Keshwani believes that, rather than erect the 10 by 10-foot shed that the Town had approved in Lambert's special permit application,

4

Lambert will be constructing a 10 by 26-foot structure where his father will store heavy land moving equipment from his construction business.  <u>Id.</u> at ¶ 43.

The values of the Keshwani and Chu property and the Fried and Fairfield property have been reduced as a result of the introduction of the Lambert residence, which they suspect will be a rental unit, in a single-family zoned district.  <u>Id.</u> at ¶¶ 50, 51, 72, 86.  Keshwani, Chu, Fried, and Fairfield allege that they have been harmed by the Mansfield defendants' "actions and policies that led to the granting of the Lambert permit for commercial use in [their] neighborhood; by the predictable resultant segregation of elderly people with disabilities away from [their] neighborhood; by [their] loss of ease in feeling free to walk in the Mulberry Village neighborhood with its unlawful expansion of commercial use traffic; and by the litigation costs associated with protecting [their] rights."  <u>Id.</u> at ¶¶ 54, 59, 75, 89.[2]  The plaintiffs do not appear to allege

---

[2] Defendants contend that Fried's Affidavit, 4th Am. Compl., Ex. A, cannot be considered as part of the Fourth Amended Complaint because it is not a proper exhibit under Rule 10(c).  <u>See</u> Defs.' Mem. of Law in Supp. of Mot. to Dismiss ("Defs.' Mem.") (Doc. No. 119-1) at 5–6; Reply to Pls.' Obj. to Mansfield Defs.' Mot. to Dismiss ("Reply") (Doc. No. 123) at 2.  The Second Circuit has held that an affidavit is not a "written instrument" under Rule 10(c).  <u>See</u> <u>Smith v. Hogan</u>, 794 F.3d 249, 254 (2d Cir. 2015); Fed. R. Civ. P. Rule 10(c) ("[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.")  However, the Second Circuit has permitted the consideration of "documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit," <u>City of Pontiac Policemen's & Firemen's Ret. Sys. V. UBS AG</u>, 752 F.3d 173, 179 (2d Cir. 2014), or could be considered 'integral' because the complaint "relies heavily upon its terms and effect[.]"  <u>Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.</u>, 62 F.3d 69, 72 (2d Cir. 1995).

Defendants argue that the plaintiffs did not rely on the Affidavit in bringing suit because the Affidavit postdated the initial filing of the lawsuit and that it is not integral to the Fourth Amended Complaint because it is referenced only three times and is never quoted.  <u>See</u> Defs.' Mem. at 6.  Defendants do not cite authority for the proposition that the plaintiffs may not be deemed to have relied on a document when filing an amended complaint—as opposed to the initial complaint—or that referencing the Affidavit three times is insufficient for the Affidavit to be considered integral to the Fourth Amended Complaint.  The court will consider Fried's Affidavit, which merely restates allegations made in the Fourth Amended Complaint in somewhat more detail, as an exhibit.  <u>Cf.</u> <u>DLJ Mortg. Capital, Inc. v. Kontogiannis</u>, 726 F. Supp. 2d 225, 234 (E.D.N.Y. 2010) (accepting charts as exhibits to an amended complaint where the charts did not pose any new allegations or legal theories).

that anyone has moved into the Lambert property or that there has been an actual increase in traffic in Mulberry Village.

### III. PROCEDURAL BACKGROUND

Plaintiffs filed this lawsuit against the PZC in the Superior Court for the Judicial District of Hartford on July 7, 2015. Notice of Removal (Doc. No. 1) at 1. After plaintiffs moved to amend the Complaint, and the Amended Complaint became operative, defendants removed the action to federal court on March 7, 2016. Id. In a Second Amended Complaint filed on September 26, 2015, plaintiffs added the Town of Mansfield; Mayor of Mansfield, Paul Shapiro; Town Manager, Matthew Hart; Director of Zoning, Linda M. Painter; Development Zoning Commission Chair, JoAnn Goodwin; and Adam Lambert as defendants. 2nd Am. Compl. (Doc. No. 53).

When the Mansfield defendants moved to dismiss (Doc. No. 73), the plaintiffs filed a Motion for Leave to File 3rd Amended Complaint (Doc. No. 84). Plaintiffs only included the first three pages of a supporting brief, which did not indicate whether the Third Amended Complaint was intended to moot the pending Motion to Dismiss or was instead raising new claims. See Ruling re. Mot. to Dismiss and Mot. for Leave to File Third Amended Complaint ("Ruling") (Doc. No. 112) at 2. In response to the court's subsequent Order to Show Cause why the unopposed Motion to Dismiss should not be granted (Doc. No. 90), plaintiffs responded that the Third Amended Complaint would moot the Motion to Dismiss (Doc. No. 92), and also filed an opposition to the Motion to Dismiss (Doc. No. 95).

The court granted defendants' Motion to Dismiss the Second Amended Complaint. It found that the Second Amended Complaint violated Rule 8 by listing seven counts that each contained merely two paragraphs: one paragraph incorporating

6

all of the preceding paragraphs, including earlier counts, and a second paragraph providing a conclusory statement such as "[t]he conduct of the defendants violated the U.S. Const. amend. XVI." Ruling at 6–8; 2d Am. Compl. at ¶ 36. The court granted plaintiffs' Motion to Amend in part, but denied it as to the proposed Third Amended Complaint because allowing the Third Amended Complaint to become operative would have been futile in view of its failure to allege facts in support of numerous conclusory statements. Id. at 9–12. On May 22, 2017, plaintiffs filed their Fourth Amended Complaint (Doc. No. 116) and, on May 25, 2017, the Mansfield defendants and Lambert each filed a Motion to Dismiss (Doc. Nos. 118 and 119).

**IV. LEGAL STANDARD**

When deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must determine whether a plaintiff has stated a legally cognizable claim by making allegations that, if true, would show that the plaintiff is entitled to relief. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007) (interpreting Rule 12(b)(6), in accordance with Rule 8(a)(2), to require allegations with "enough heft to 'sho[w] that the pleader is entitled to relief'" (alteration in original)). The court takes all factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. Crawford v. Cuomo, 796 F.3d 252, 256 (2d Cir. 2015). However, the principle that a court must accept a complaint's allegations as true is inapplicable to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555).

To survive a motion pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when

7

the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556).

**V. DISCUSSION**

    A.    Fourteenth Amendment

When analyzing procedural due process claims under the Fourteenth Amendment, a court ask "whether there exists a liberty or property interest of which a person has been deprived, and if so . . . whether the procedures followed by the State were constitutionally sufficient." Victory v. Pataki, 814 F.3d 47, 59 (2d Cir. 2016) (quoting Swarthout v. Cooke, 562 U.S. 216, 219 (2011)). Property interests "are created[,] and their dimensions are defined by[,] existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits." Looney v. Black, 702 F.3d 701, 706 (2d Cir. 2012) (quoting Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 577 (1972)). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire and more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." Harrington v. Cnty. of Suffolk, 607 F.3d 31, 34 (2d Cir. 2010) (internal quotation marks omitted) (quoting Town of Castle Rock, Colo. v. Gonzales, 545 U.S. 748, 756 (2005)).

Among the plaintiffs, only Fairfield asserts a violation of her right to procedural due process. See Pls.' Mem. of Law in Obj. to Mansfield Defs'. Mot. to Dismiss ("Pls.'

Mem.") (Doc. No. 121-1) at 18.³ She argues that the PZC deprived her of her property interest in the value of her home and her liberty interest in not being confined to walking only in her home. See id. at 19–20; 4th Am. Compl. at ¶¶ 124–26. In addition, Fairfield appears to argue that she has a protected interest in the hearing process for zoning changes itself. See id. at 18–19. Defendants argue that Fairfield fails to state a claim for relief because "a detrimental impact on her property value" is not a protected property interest under the Fourteenth Amendment. See Defs.' Mem. of Law in Supp. of Mot. to Dismiss ("Defs.' Mem.") (Doc. No. 119-1) at 8.

Fairfield's claim under the Due Process Clause fails because she has not alleged that she has been deprived of a protected interest. The Second Circuit has determined that the diminishment of property values is not a deprivation of a property interest. See Fusco v. Connecticut, 815 F.2d 201, 206 (2d Cir. 1987) (holding that a decline in real property value is not a deprivation cognizable under the Fourteenth Amendment); BAM Historic District Ass'n v. Koch, 723 F.2d 233, 237 (2d Cir. 1983) (same). Fairfield argues that she was harmed by the defendants' alleged evasion of the procedural safeguards in the Mansfield Zoning Regulations and state statutes, which has left a protected class under the FHA with no recourse to address disparate impact outside of

---

³ Plaintiffs' brief in opposition to the Motion to Dismiss contains a background section with 12 and a half single-spaced pages that are copied and pasted from the Fourth Amended Complaint. See Pls.' Mem. at 4–16. Plaintiffs also replicate paragraphs from the Fourth Amended Complaint in each section of their brief in lieu of making arguments. See id. at 19–20, 22–23. Considering that the court and all of the parties already have a copy of the Fourth Amended Complaint, the court can see no reason why plaintiffs reproduced the Fourth Amended Complaint in their brief, let alone did so in violation of Local Rule 10.

Additionally, after defendants filed a reply to plaintiffs' brief, plaintiffs filed a sur-reply without permission of the court in violation of District of Connecticut Local Civil Rule 7(d). Plaintiffs' briefing is inexcusable for a counseled complaint. Plaintiffs' conduct is even more surprising given the history of pleadings leading up to this latest round of briefing. In its Ruling on defendants' first Motion to Dismiss and plaintiffs' Motion to Amend, the court admonished plaintiffs that "[t]his is the plaintiffs' last opportunity to remedy the legal and typographic errors which have littered the previous complaints." Ruling at 13.

litigation. See Pls.' Mem. at 19. However, adverting to protected class status under the FHA cannot erase the first step of the Due Process analysis—the identification of an underlying liberty or property interest. See Olim v. Wakinekona, 461 U.S. 238, 250 (1983) ("Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement.") To the extent Fairfield believes she was subjected to disparate treatment on the basis of her membership in protected class under the FHA, her recourse lies in the FHA, not in the Due Process Clause.

Fairfield's allegation that she could be deprived of her liberty to walk outside of her home also does not support a Due Process claim. Although diminishment of the value of her home was the sole interest Fairfield pled in the Fourth Amended Complaint, Fairfield also argues in plaintiffs' brief in opposition to the Motion to Dismiss that the approval of the Lambert special permit could limit her to only walking in her home. See Pls.' Mem. at 20. Fairfield has not indicated where she derived the liberty interest she has defined as "not being confined to walking only in her home." See Wilkinson v. Austin, 545 U.S. 209, 221 (2005) ("A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word "liberty," or it may arise from an expectation or interest created by state laws or policies.") (citations omitted). The court need not conduct an inquiry into the origins of such an interest because Fairfield has not plausibly alleged that her liberty to walk outside of her home is at stake. The Mansfield defendants approved a two-bedroom unit. 4th Am. Compl. at ¶ 101. It is inconceivable that the future occupants of a two-bedroom unit will prevent Fairfield from ever walking outside.

Without a protected interest in real property value or another interest protected by the hearing process, the Due Process Clause is not implicated. Fairfield's Fourteenth Amendment claim is therefore dismissed.

B. Fair Housing Act

The defendants argue that Fried—the only plaintiff to bring a claim under the FHA—has failed to state a claim because she does not allege that the PZC denied her housing or the ability to do anything on her property. See Defs.' Mem. at 12. Moreover, it is unclear what injury the PZC's grant of Lambert's special use application caused Fried under the FHA. See id. at 13. Fried argues that the PZC violated her rights under the FHA when it declined to consider any disparate impact on the elderly with disabilities in PZC special permit applications, even after such a concern was raised during a public hearing. See Pls.' Mem. at 22.

The FHA, as amended by the Fair Housing Amendments Act ("FHAA") in 1988, "prohibits governmental agencies from implementing or enforcing housing policies in a discriminatory manner against persons with disabilities." Tsombanidis v. West Haven Fire Dep't, 352 F.3d 565, 573 (2d Cir. 2003), superseded on other grounds by Mhany Mgmt., Inc. v. Cty. Of Nassau, 819 F.3d 581 (2d Cir. 2016); see also 42 U.S.C. § 3604. The FHAA provides that it is unlawful "[t]o discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap," 42 U.S.C. § 3604(f)(1), and "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap," 42 U.S.C. § 3604(f)(2). "To establish discrimination under . . . the FHAA . . . plaintiffs have

11

three available theories: (1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation." Quad Enterprises Co., LLC v. Town of Southold, 369 Fed. App'x 202, 205 (2d. Cir. 2010) (quoting Tsombanidis, 352 F.3d at 573). Fried brings claims under the second and third theories: disparate impact and failure to make a reasonable accommodation.[4]

In order to make out a prima facie case under a disparate impact theory, a plaintiff must show "(1) the occurrence of certain outwardly neutral practices, and (2) a significantly adverse or disproportionate impact on persons of a particular type produced by the defendant's facially neutral acts or practices." Mhany Management, Inc. v. County of Nassau, 819 F.3d 581, 617 (2d Cir. 2016) (quoting Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown, 294 F.3d 35, at 52–53 (2d Cir. 2002)). Plaintiffs "must first identify members of a protected group that are affected by the neutral policy and then identify similarly situated persons who are unaffected by the policy." Tsombanidis 352 F.3d at 576–77. Through this comparison, the plaintiff must establish "a significantly adverse or disproportionate impact" on a protected group of individuals. Id. (quoting Hack v. President of & Fellows of Yale Coll., 237 F.3d 81, 90 (2d Cir. 2000)).

Fried fails to clearly identify an outwardly neutral policy or practice that is subject to challenge under the FHAA on a disparate impact theory. Fried alleges that the

---

[4] Although plaintiffs allege that Town Councilman Ben Shaiken displayed "invidious discriminatory animus" when he told Lowe that "her appeal was a waste of taxpayer money," 4th Am. Compl. at ¶¶ 49, 111, Fried makes no mention of a disparate treatment theory in the Fourth Amended Complaint or in her Objection to Defendants' Motion to Dismiss.

In the absence of any facts in the Fourth Amended Complaint or legal argument in plaintiffs' brief regarding disparate treatment, the court assumes Fried now only brings her FHA claim under disparate impact and reasonable accommodation theories.

12

"policy or practice is not to consider disparate impact on a protected class [the elderly with disabilities] is not [sic] considered in PZC special permit applications, even when claims are raised during public hearings." Pls.' Mem. at 22. The court is struggling to construe Fried's challenge of a purported practice of not considering disparate impact on the elderly with disabilities as a facially-neutral policy or practice. See Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown, 294 F.3d 35, 52–53 (2d Cir. 2002) (noting that a "disparate impact analysis examines a facially-neutral policy or practice" and that plaintiffs must show the occurrence of "outwardly neutral practices"). In arguing that there should be a particular process in place to evaluate the impact of any zoning decision on the elderly with disabilities, Fried has defined her claim based on the treatment of the elderly with disabilities as compared to other populations. The alleged practice she challenges is plainly not facially neutral. The FHAA does not guarantee a member of a protected class the right to direct administrative bodies to follow a particular process; rather, among other forms of discrimination, it prohibits neutral practices that themselves have a disproportionate impact on a protected class.

In addition to not being outwardly neutral, the process by which the PZC considered the Lambert special permit application also does not constitute a practice. Fried only challenges the process by which the PZC considered a single special permit application. She does not identify any additional special permit applications beyond asserting the conclusory allegation that there is a "policy and practice." See Pls.' Mem. at 22. One act cannot form the basis for a disparate impact claim. See Reg'l Econ. Cmty. Action Program, Inc., 294 F.3d at 53 (finding that one specific act—the denial of a

13

special-use permit—did not constitute a facially-neutral policy or practice for purposes of a disparate impact claim).[5]

Even assuming that Fried had challenged a facially-neutral practice, she has not plausibly alleged that there will be a significantly adverse or disproportionate impact on a protected class. First, Fried speculates that a couple of college-aged students will move into the Lambert two-bedroom efficiency unit. See 4th Am. Compl. at ¶ 96, Ex. A at 3. Second, based on national averages that college-aged students drive more recklessly than the general population, see 4th Am. Compl., Ex. A at 3, Fried predicts that the residents of Lambert's unit will drive dangerously on Olsen Drive. Fried's allegation is based on her experience that "alcohol consumption is a major contributing factor in [college-age drivers'] automobile accidents," see id., and therefore assumes that the potential residents of Lambert's property will be drunk driving during times when elderly neighbors with disabilities will be walking outside. Third, Fried alleges that the risk presented by the new residents' driving will impact the elderly with disabilities more than similarly situated populations without a disability and thereby disproportionately prevent the elderly with disabilities from walking outside. Even if the court accepts the first two allegations as plausibly asserted, which the court is unlikely to do, the prevalence of falls among the elderly in general, see 4th Am. Compl. at ¶ 99, does not plausibly support this last specific allegation. The court cannot reasonably infer from these allegations that non-elderly, non-disabled people living in a neighborhood with

---

[5] If Fried were challenging a practice of granting special permits generally, which, unlike the purported practice she describes, is a facially neutral act, she would still not have alleged facts to make out a disparate impact theory because she has only alleged that one special permit application has been approved.

reckless student drivers due to special permits allowing construction of one or more efficiency units would be more likely to walk outside than elderly disabled residents: it is not plausible that anyone would walk under such circumstances, severe enough to deter the elderly with disabilities. No reasonable juror could believe Fried's claim, which is based on conjecture upon conjecture.

To state a prima facie case for discrimination based on a failure to reasonably accommodate, "a plaintiff must show (1) that the plaintiff or a person who would live with the plaintiff had a handicap within the meaning of § 3602(h); (2) that the defendant knew or reasonably should have been expected to know of the handicap; (3) that the accommodation was likely necessary to afford the handicapped person an equal opportunity to use and enjoy the dwelling; (4) that the accommodation requested was reasonable; and (5) that the defendant refused to make the requested accommodation." Olsen v. Stark Homes, Inc., 759 F.3d 140, 156 (2d Cir. 2014); see also 42 U.S.C. § 3604(f)(3). "Plaintiffs must show that, but for the accommodation, they likely will be denied an equal opportunity to enjoy the housing of their choice." Id. (quoting Tsombanidis, 352 F.3d at 578).

Fried alleges that she was denied a reasonable accommodation when the PZC refused to consider at the public hearing the disparate impact of the Lambert special permit on the elderly with disabilities and proceeded to grant Lambert's application. See Pls.' Mem. at 23. She claims that the approval of the special permit will result in increased traffic from student drivers—who allegedly have more automobile accidents than the general population—and endanger the elderly with disabilities who walk on Olsen Drive. See 4th Am. Compl. at ¶ 105; Ex. A at 4. Fried has not plausibly alleged

that she will not be able to walk outside if one or two college-aged people move into the neighborhood. It is quite simply not a reasonable inference to conclude that the accommodation Lambert requested was necessary for her to use or enjoy her dwelling. Moreover, one of Fried's requested accommodations—consideration of the impact on people with handicaps during zoning decisions—is even farther removed from any conceivable direct effect on her than the special permit approval itself.

Fried also does not allege facts regarding how the accommodation she requested relates to her specific physical condition. See Salute v. Stratford Greens Garden Apartments, 136 F.3d 293, 301 (2d Cir. 1998) ("[T]he duty to make reasonable accommodations is framed by the nature of the particular handicap.") Fried alleges that she has Osteoporosis and CREST Syndrome and "has related medical needs for exercise." See 4th Am. Compl. at ¶ 10. Even assuming that every licensed student age driver poses a danger to pedestrians, Fried does not allege how she has a different need for exercise, or is at greater risk when walking as a result of the approval of the efficiency unit at 17 Olsen Drive, than someone without her disability. See Henrietta D. v. Bloomberg, 331 F.3d 261, 276 (2d Cir. 2003) (recognizing that the FHAA is "addressed to rules . . . that hurt [people with disabilities] by reason of their handicap, rather than that hurt them solely by virtue of what they have in common with other people." (emphasis in original) (quoting Good Shephard Manor Found., Inc. v. City of Momence, 323 F.3d 557, 561 (7th Cir. 2003)).

In addition to her claim under the FHA, Fried brings a claim under section 1982 of title 42 of the United States Code. See 4th Am. Compl. at ¶ 135; 42 U.S.C. § 1982 ("All citizens of the United States shall have the same right . . . as is enjoyed by white

citizens . . . to inherit, purchase, lease, sell, hold, and convey real and personal property.") Because Fried does not allege that she was discriminated against on the basis of her race, she has failed to state a claim under section 1982. See <u>Gomez-Perez v. Potter</u>, 553 U.S. 474, 479 (2008) (holding that banning "discrimination based on race" is the plain meaning of section 1982); see also <u>Jones v. Alfred H. Mayer Co.</u>, 392 U.S. 409, 413 (1968) (recognizing that 42 U.S.C. § 1982 "deals only with racial discrimination.")

    C.    <u>State Law Claims</u>

Plaintiffs allege violations of section 8-23 of the Connecticut General Statutes (Count One) and private nuisance (Count Four). Because the plaintiffs' federal causes of action are dismissed, the court cannot exercise supplemental jurisdiction over the state law claims. Therefore, Count One and Count Four are dismissed.

## VI. CONCLUSION

For the foregoing reasons, the defendants' Motions to Dismiss (Doc Nos. 118 and 119) are granted.

**SO ORDERED.**

Dated at New Haven, Connecticut this 10th day of January, 2018.

                          /s/ Janet C. Hall
                          Janet C. Hall
                          United States District Judge